NATIONAL AVENUE BUILDING
COMPANY, Respondent,

v.

Donald R. STEWART, Appellant.

No. 19972.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 13, 1995.

Motion for Rehearing and
Transfer to Supreme
Court Denied Nov. 6, 1995.

Application to Transfer Denied
Dec. 19, 1995.

---

Thomas W. Rynard, Craft Fridkin & Rhyne, Jefferson City, for appellant.

Frank M. Evans, III, Ed. L. Payton, Miller & Sanford, Springfield, for respondent.

CROW, Judge.

This case, in its eleventh year of an operose trek through the Missouri judiciary, reaches us a fourth time. It was first here in 1990: *National Avenue Building Company v. Stewart,* 794 S.W.2d 304 (Mo.App.S.D. 1990). It was here again in 1992; we filed two opinions simultaneously: *National Avenue Building Company v. Stewart,* 838 S.W.2d 514 (Mo.App.S.D.1992), and *State ex rel. Stewart v. McGuire,* 838 S.W.2d 516 (Mo. App.S.D.1992).

Historians interested in the evolution of the case from its origin on January 30, 1985,[1] through the end of its second visit here, October 13, 1992, can peruse our 1990 and 1992 opinions. We decline to needlessly fatten the current volume of the South Western Reporter, so we shall not, in this opinion, recount all that has gone before. The point of embarkation for this stage of the journey is the site where we left the parties October 13, 1992.

At that time, issues awaiting adjudication in the trial court appeared in three pleadings, identified as "Pleading A," "Pleading B," and "Pleading C," respectively in our 1992 mandamus opinion, 838 S.W.2d at 517. We concluded that opinion by issuing a peremptory writ of mandamus requiring the trial court to hear and determine Pleading B and, to the extent necessary in doing so, to hear and determine Pleading A. *Id.* at 519. We ordered the trial court to perform that task within a reasonable time. *Id.*

---

**1.** That was the date of the demand for arbitration. *National Avenue,* 794 S.W.2d at 304–05.

The first pleading was filed in the trial court March 5, 1985. *Id.* at 305.

That order led to the case's third visit to this Court, a 1994 unreported mandamus action brought by Donald R. Stewart ("Stewart"), defendant below. We issued a "Final Order in Mandamus" on September 9, 1994, directing the trial court to comply with our 1992 writ no later than November 10, 1994.

On November 14, 1994 (four days after the deadline imposed by our September 9, 1994, order), the trial court signed an 11–page document designated "Findings of Fact and Conclusions of Law." It ended with an order from which Stewart brings the instant appeal.

■ The first issue we confront is whether the order is appealable. National Avenue Building Company ("National"), plaintiff below, has moved us to dismiss the appeal, insisting the order is unappealable.

The order grants a motion by National—Pleading A identified in our 1992 mandamus opinion, 838 S.W.2d at 517—to vacate an arbitration award in favor of Stewart against National for $208,587.17. The order further provides:

"[T]his Court ... remands this matter for rehearing of the arbitration before a new panel of arbitrators and directs the arbitration panel to enter an arbitration award which will set forth the findings of fact in a detailed manner consistent with the agreement between the parties determined to exist by this Court, and further denies Stewart's motion to confirm."

Pleading A, referred to above, invokes two statutes, one of which is § 435.405.[2] The other statute invoked by Pleading A is § 435.410, which governs modification or correction of an arbitration award. The latter section is immaterial in this appeal.

The above-quoted excerpt from the trial court's order ends by denying an application by Stewart to confirm the arbitration award. Stewart's application—Pleading B identified in our 1992 mandamus opinion, 838 S.W.2d at 517—invokes § 435.400.[3]

The statutes identified in the two preceding paragraphs are components of Missouri's "Uniform Arbitration Act," §§ 435.350–.470 ("MUAA"). MUAA has its own section governing appeals, § 435.440. Insofar as pertinent here, § 435.440 reads:

"1. An appeal may be taken from:

(1) ...

(2) ...

(3) An order ... denying confirmation of an award;

(4) ...

(5) An order vacating an award without directing a rehearing; or

...."

If the order appealed from had merely denied Stewart's application to confirm the arbitration award, the order would have been appealable per § 435.440.1(3), above, which allows an appeal from an order denying confirmation of an award.

If the order had merely vacated the award without directing a rehearing, the order

---

2. References to statutes are to RSMo1986. Section 435.405 reads:

"1. Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators ... so conducted the hearing, contrary to the provisions of section 435.370, as to prejudice substantially the rights of a party; or

(5) ...

2. ...

3. In vacating the award on grounds other than stated in subdivision (5) of subsection 1 of this section the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with section 435.360, or if the award is vacated on grounds set forth in subdivisions (3) and (4) of subsection 1 of this section the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with section 435.360...."

3. Section 435.400 reads:

"Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 435.405 and 435.410."

would have been appealable per § 435.440.1(5), above.

However, the order did three things: (1) denied confirmation of the award, (2) vacated the award, and (3) directed a rehearing. Because it did all three, National maintains § 435.440.1(5) bars Stewart's appeal.

Neither side cites a Missouri case addressing National's contention, and we have discovered none. Consequently, says National, we must be guided by § 435.450 which provides that the MUAA "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it."

In *State ex rel. Tri–City Construction Co. v. Marsh,* 668 S.W.2d 148 (Mo.App.W.D. 1984), cited by National, the court said § 435.450 "gives special value to the precedents of other states on the same issue." *Id.* at 151 [3]. The opinion continued: "In the absence of any Missouri authority and without any compelling policy to overcome the need for uniformity, the [MUAA] should be construed as other states have construed it in their decisional law." *Id.* at 151 [4].

With that preface, we examine *Maine Department of Transportation v. Maine State Employees Association,* 581 A.2d 813 (Me. 1990), the strongest case cited by National in support of its position. There, a state employee was fired for dereliction of duty. He maintained his dismissal was without just cause. The dispute was arbitrated, resulting in an award reinstating the employee and granting him lost wages and benefits. The state moved to vacate the award, averring the arbitrator exceeded his powers. The trial court granted the motion and remanded the dispute for rehearing by a new arbitrator. The rehearing resulted in an award affirming the employee's discharge. The employee appealed, challenging the trial court's order vacating the *first* award (the employee evidently conceded he could not contest the second award on the merits).

The state argued that the employee was barred from challenging the order vacating the first award because he never filed a motion to confirm the first award. Had he done so, a trial court order denying confirma-

tion would have been appealable under a provision in the Maine arbitration statute identical to § 435.440.1(3), quoted *supra.* The Supreme Judicial Court of Maine disagreed, holding that the statutory provision relied on by the state had to be read in conjunction with another provision in the Maine arbitration statute identical to § 435.440.1(5), and "with the sound policy, present throughout our system of jurisprudence as well as in the arbitration statute, of preserving judicial resources and limiting 'appeals prior to judgment to those instances where the element of finality is present.'" 581 A.2d at 814–15. The opinion continued:

> "By providing for appeals only from those orders vacating arbitration awards that do not direct a rehearing, [the] section [of the Maine statute identical to § 435.440.1(5)] implicitly bars appeals from orders that direct a rehearing. This is consistent with the policy of barring an immediate appeal from the granting of a new trial in a civil case. . . .
>
> . . . .
>
> A Superior Court order vacating a first arbitration award and remanding for a rehearing, like a motion for a new trial, is not immediately appealable, but may be reviewable after the second arbitration."

*Id.* at 815 (footnote omitted).

It is clear from the opinion that there were two reasons for the Maine court's holding: (a) the court's interpretation of the section of the Maine arbitration statute identical to § 435.440.1(5), and (b) the Maine practice of postponing an appeal from an order granting a new trial in a civil case until entry of judgment following the new trial.

The Maine practice is contrary to the Missouri practice. Section 512.020 specifically authorizes an appeal "from any order granting a new trial" in any civil case. *See: Schipper v. Brashear Truck Co.,* 132 S.W.2d 993, 1000 [12] (Mo.1939). Therefore, ground "(b)" of the Maine holding does not aid National; if anything, that ground is adverse to National.

The second case cited by National is *Metropolitan Airports Commission v. Metropolitan Airports Police Federation,* 443 N.W.2d

519 (Minn.1989). There, a dispute between a local governmental agency and an employees' federation was submitted to arbitration. The federation was dissatisfied with the arbitrator's award, so the federation brought an action alleging the arbitrator had exceeded his authority. The trial court vacated the award and remanded the dispute for rehearing before another arbitrator. The Supreme Court of Minnesota, construing a section of the Minnesota arbitration statute identical to § 435.440.1(5), held the trial court's order unappealable. 443 N.W.2d at 523 [1]. However, invoking a constitutional provision giving it "appellate jurisdiction in all cases," the Supreme Court of Minnesota took jurisdiction of the appeal, reversed the trial court, and reinstated the arbitrator's award.

The Minnesota case differs from the instant case in that nothing in the Minnesota case indicates the governmental agency moved the trial court to confirm the award. Therefore, there was no order denying confirmation. Orders denying confirmation are appealable under a section of the Minnesota arbitration statute identical to § 435.440.1(3). As there was no such order, the Minnesota court did not have to reconcile the provision allowing an appeal from such an order with the provision allowing an appeal from an order vacating an award without directing a rehearing.

Furthermore, while the section of the Minnesota arbitration statute identical to § 435.440.1(5) did not authorize the appeal, it did not bar appellate review under the court's constitutional authority. 443 N.W.2d at 523[2].

The final case cited by National is *Carner v. Freedman*, 175 So.2d 70 (Fla.App.1965), where a trial court vacated an arbitration award because of misconduct by an arbitrator and directed a rehearing by the same arbitrators. The parties who had sought vacatur appealed from the trial court's order, maintaining it was error to remand the dispute to the same arbitrators. The adverse party agreed the order was erroneous. The Florida appellate court, applying a section of the Florida arbitration code identical to § 435.440.1(5), held the order unappealable. In the Florida case, as in the Minnesota case,

no one asked the trial court to confirm the award, so the Florida court did not have to reconcile the provision allowing an appeal from an order denying confirmation of an award with the provision allowing an appeal from an order vacating an award without directing a rehearing.

A case with facts virtually identical to the instant case is *Forsythe International, S.A. v. Gibbs Oil Company of Texas*, 915 F.2d 1017 (5th Cir.1990). The principal difference between *Forsythe* and the instant case is that *Forsythe* applied the Federal Arbitration Act, Title 9, U.S.C. In *Forsythe*, an arbitration panel rendered an award for the plaintiff. The plaintiff asked a federal district court to confirm the award. The defendant asked the court to vacate the award. The court granted the latter request and remanded the dispute to a new arbitration panel. The plaintiff appealed; the defendant argued that the district court's order was an unappealable interlocutory order.

The United States Court of Appeals for the Fifth Circuit held that 9 U.S.C. § 15 (as it existed before renumbering by a 1990 amendment) embodied federal policy promoting arbitration by permitting interlocutory appeals of orders favoring litigation over arbitration and precluding review of interlocutory orders favoring arbitration. 915 F.2d at 1020. Accordingly, orders staying judicial proceedings and ordering arbitration are not appealable. *Id.* However, explained the court, "This is not such a case." *Id.* The opinion continued:

"While the district court's order commanded further arbitration, it also nullified the decision of an arbitration panel. If an order remanding the case to a different arbitration panel renders a vacatur unreviewable, parties to arbitration could never determine whether the district court acted within the narrow statutory limits governing vacatur of the original award. Such a result would disserve the policies that promote arbitration and restrict judicial review of awards. Where the district court has vacated an award and ordered new arbitration by a different panel, its vacatur becomes reviewable pursuant to 9 U.S.C. § 15(a)(1)(E) [which authorizes an appeal

from an order vacating an arbitration award]."

*Id.* (footnote omitted).

We recognize, of course, that 9 U.S.C. § 15(a)(1)(E) differs from § 435.440.1(3) and (5). However, the rationale of *Forsythe* is sound. That is demonstrated by what occurred in the instant case.

The trial court ordered the parties to proceed with arbitration June 14, 1985. *National Avenue*, 794 S.W.2d at 305. Some 31 months later, on February 2, 1988, Stewart filed a copy of the arbitration award in the trial court. *Id.* The order appealed from, entered six years and nine months later, denied Stewart's application to confirm the award, vacated the award, and ordered a rehearing before a new arbitration panel.

If Stewart is barred from appealing that order, he must arbitrate anew. If National is dissatisfied with the result of the new arbitration, National can seek a trial court order vacating the new award and directing another rehearing. If that effort were to succeed, Stewart would have to arbitrate a third time. Theoretically, the process could continue ad infinitum.[4]

We are mindful that arbitration proceedings are favored and encouraged by Missouri courts. *Sheffield Assembly of God Church, Inc. v. The American Insurance Co.*, 870 S.W.2d 926, 929 [2] (Mo.App.W.D.1994). That policy was honored here. The trial court ordered arbitration (ten years ago), and the arbitration went forward to a conclusion, producing the award mentioned earlier in this opinion. The trial court then nullified the arbitration by denying confirmation of the award, vacating the award, and ordering a rehearing.

As we have seen, had the trial court's order merely denied confirmation of the award, it would have been appealable under § 435.440.1(3). Because the order also vacated the award and directed a rehearing, must we hold appealability was extinguished?

The only basis for such a holding is that there is no statutory authorization for an appeal from an order vacating an award and directing a rehearing. There is, as we have learned, statutory authorization for an appeal from an order vacating an award without directing a rehearing: § 435.440.1(5).

The lone case that considered whether an order denying confirmation of an award would be rendered unappealable where the order also vacated the award and directed a rehearing is the Maine case, 581 A.2d 813. The analysis there was arguably dictum in that the employee never filed a motion to confirm the award, and the order did not deny confirmation. Furthermore, the Maine court construed the Maine statute in harmony with the Maine practice of postponing an appeal from an order granting a new trial in a civil case until entry of judgment following the new trial. As noted earlier, the public policy of Missouri, as established by the General Assembly in § 512.020, is that a party may appeal from an order granting a new trial in a civil case.

In the Minnesota case, 443 N.W.2d 519, and the Florida case, 175 So.2d 70, no one asked the trial court to confirm the award. The orders in those cases vacated the awards and directed rehearings. No statutory authority existed for appeals from such orders.

Appealability of the order here must be determined from subdivisions (3) and (5) of subsection 1 of § 435.440. Each subdivision allows an appeal from a specific type of order. Neither subdivision purports to bar an appeal of an order appealable under another subdivision.

National's argument, as we grasp it, is: (a) subdivision (5) allows an appeal from an order vacating an award without directing a rehearing, (b) the order here is unappealable under subdivision (5) because, in addition to vacating the award, the order directs a rehearing, and (c) because the order is unappealable under subdivision (5), its appealability under subdivision (3) as an order denying confirmation of an award is extinguished. Acceptance of National's argument would allow subdivision (5) to override subdivision (3).

---

4. We do not imply the trial judge who entered the order appealed from would perpetually recycle the dispute for arbitration. However, without appellate review, some intractable trial judge could do so.

We find nothing in § 435.440 suggesting that if an order is appealable under one subdivision of subsection 1, appealability is extinguished if the order is unappealable under another subdivision. Had the General Assembly intended that an order denying confirmation of an award be unappealable if a rehearing is directed, the General Assembly could easily have added a proviso to subdivision (3) stating "without directing a rehearing." Such a proviso appears at the end of subdivision (5).

In interpreting a statute, a court must strive to harmonize all provisions of the statute. *20th & Main Redevelopment Partnership v. Kelley,* 774 S.W.2d 139, 141 [2] (Mo. banc 1989). Subdivisions (3) and (5) of subsection 1 of § 435.440 can be harmonized by acknowledging there may be instances where no party will seek trial court confirmation of an arbitration award. In such instances, there will be no trial court order denying confirmation. If a party seeks an order vacating the award and directing a rehearing, and the trial court enters such an order, it will be unappealable because neither subdivision (3) nor subdivision (5) confers appealability.

By holding that the appealability of an order denying confirmation, conferred by subdivision (3), is not extinguished if the order is unappealable under another subdivision, we place all subdivisions of subsection 1 of § 435.440 on an equal footing. Because of the paucity of decisional law from other states addressing the issue, our holding does not offend the policy of § 435.450 and *Tri-City Construction,* 668 S.W.2d at 151 [4], that Missouri courts should construe the MUAA consistent with the decisions of other states. Furthermore, our holding is consistent with the public policy of Missouri allowing an appeal from an order granting a new trial in a civil case.

Accordingly, we hold the order appealed from here is appealable. National's motion to dismiss the appeal is denied. We emphasize that our holding is confined to the particular facts of this case and is based on the appealability of an order denying confirma-

tion of an award under § 435.440.1(3). We do not imply the order would have been appealable absent the provision denying confirmation.

The trial court's order contains thirty-seven separately numbered findings of fact and seven separately numbered conclusions of law. Stewart's brief presents five assignments of error. No assignment of error pertains to all of the findings of fact or all of the conclusions of law. In adjudicating each assignment of error, we shall set forth the specific findings of fact and conclusions of law pertinent to the issues raised by that particular assignment of error.

As reported in our 1990 opinion, National and Stewart entered into a contract in 1984 whereby Stewart was to perform certain excavation, grading, paving and other work on property owned by National. 794 S.W.2d at 304. The contract identified the architect for the project as: "Hood–Rich Architects and Consulting Engineers."

As further reported in our 1990 opinion, a dispute arose between National and Stewart. *Id.* at 304–05. They presented the dispute to a three-member panel of arbitrators January 5–8, 1988. We glean from the record that the thrust of Stewart's evidence was that because of engineering errors by Hood–Rich, he (Stewart) had to perform additional work for which he was not properly compensated. The arbitrators unanimously rendered the $208,587.17 award in favor of Stewart mentioned earlier in this opinion.

The first assignment of error we consider is point three. Pertinent to it, the trial court made the following findings of fact:

"17. During the course of the arbitration hearing, evidence was introduced regarding the role of Hood–Rich in the construction project which served as the basis of the dispute between the parties.

18. Gary F. Findley[5] was an engineer and member of the arbitration panel.

19. Shortly after the completion of the arbitration hearing, [National's] counsel, Frank Evans, was talking with [National's]

---

5. His surname is spelled "Finley" where his signature appears at the foot of the arbitration award. We assume that is correct, so we shall spell his surname that way when we refer to him.

expert witness Dr. Morris. This conversation took place within a few feet of Arbitrator Findley and Attorney Evans was speaking in a tone of voice which would have allowed Arbitrator Findley to overhear the conversation.

20. Attorney Evans told [Morris] that they were pleased with his presentation during the arbitration hearing and would recommended [sic] to [National] using him as a consultant in regard to the pending lawsuit [National] had filed against Hood–Rich.

21. Immediately following that conversation, Arbitrator Findley approached Attorney Evans, called him aside, and began a conversation.

22. Arbitrator Findley stated to Attorney Evans that he had some suggestions to offer. Attorney Evans thought he was referring to the arbitration proceedings. Arbitrator Findley then stated that 'after the smoke all clears on this matter and everyone has quieted down, if the owners still have problems with Hood–Rich I think I can help you out. I have very strong opinions regarding the engineer's responsibility on projects like this.' Arbitrator Findley went on to say he had done development engineering like the engineering conducted in the construction project which was the basis of the dispute between Stewart and [National]. Arbitrator Findley finished by stating that he could help [National] if Attorney Evans kept representing the owners and could put Attorney Evans in touch with other people who could help also."

One of the trial court's conclusions of law was evidently based on the above-quoted findings of fact. That conclusion of law is:

"4. Arbitrator Findley was biased in that he offered to serve as an expert consultant to [National] in a related lawsuit and that such services would be necessary only if the arbitration panel entered an award favorable to Stewart and against [National] and on that basis alone this court grants [National's] motion to vacate and remands this matter for rehearing of

the arbitration before a new panel of arbitrators."

The trial court based the above conclusion of law on § 435.405.1(2),[6] which commands a trial court to vacate an arbitration award where there was "evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party."

Stewart's third point reads:

"The trial court erred in denying to confirm the arbitration award and in vacating it on the grounds that one of the arbitrators was biased in that the evidence failed to establish any bias on behalf of the arbitrator because the only evidence as to bias consisted of statements made by the arbitrator after all the evidence had been taken in the hearing and the matter closed and the statements do not manifest any predisposition by the arbitrator in favor of or against one of the parties to the arbitration."

■ The argument following the point makes it clear that the point refers to findings of fact 17 through 22, quoted *supra*, and conclusion of law 4, quoted *supra*. In considering the point, we are guided by the following principles set forth in *Sheffield Assembly of God Church, Inc.*, 870 S.W.2d at 929[2–5] and 930:

"Arbitration proceedings are favored and encouraged by the courts, since the object is to obtain such a settlement as will put an end to the dispute. *Masonic Temple Ass'n v. Farrar*, 422 S.W.2d 95, 109 (Mo.App.1967). Every reasonable intendment is indulged in favor of an arbitration award. *Id.* Moreover, courts construe the arbitration proceedings with liberality. *Id.* ... It has been held that the purpose of the [Uniform Arbitration Act] is to afford parties the opportunity to reach a final disposition of differences in an easier more expeditious manner than by litigation. *Western Waterproofing Co. v. Lindenwood Colleges*, 662 S.W.2d 288, 291 (Mo.App. 1983). In order to facilitate this purpose, judicial review of arbitration awards is limited. *Id.*

**6.** Footnote 2, *supra.*

. . . .

Courts interpreting the [Uniform Arbitration Act] in other jurisdictions have held that in order to show evident partiality, the interest or bias of the arbitrator must be direct, definite and capable of demonstration, rather than remote, uncertain or speculative. *William B. Lucke, Inc. v. G.B. Spiegel,* 131 Ill.App.2d 532, 266 N.E.2d 504, 508 (1970); *Sidarma Societa Italiana di [Di] Armamento Spa v. Holt Marine Industries, Inc.,* 515 F.Supp. 1302, 1307 (S.D.N.Y.1981)."

Stewart does not challenge findings of fact 17 through 22, quoted *supra.* Instead, Stewart maintains those facts are insufficient to warrant vacatur of the award under § 435.405.1(2).

National responds that arbitrator Finley, by offering to aid National "as an expert for pay" in National's dispute with Hood–Rich, placed himself in the position of receiving a financial benefit if the arbitration panel found in favor of Stewart against National, but not if the panel found in favor of National against Stewart. Consequently, says National, Finley was prejudiced "against finding in favor of [National]," thereby authorizing the trial court to vacate the award on the ground of evident partiality by an arbitrator under § 435.405.1(2).

We have studied the four cases cited by National in support of its position. Only one involved *ex parte* contact by a party with an arbitrator, and in that case the contact was initiated by the party for whom the arbitrator ruled. Here, the contact was between Finley and lawyer Evans, who represented the party against whom the arbitrators ruled. Furthermore, the contact was initiated by Finley, not Evans, and there was no evidence that they discussed any of the issues between National and Stewart.

The only evidence regarding the conversation was the testimony of Evans. Asked how he responded to Finley, Evans testified, "I just tried to be polite, tried to—I was honestly shocked, did not—tried to avoid saying anything on my part that would be improper in—under these circumstances." Nothing in Evans' testimony indicates he implied to Finley that National would consider engaging Finley to assist National in its suit against Hood–Rich.

It is inferable from Finley's remarks that he felt the dispute between National and Stewart arose because of ineptitude by Hood–Rich, and that he (Finley) could assist National in its suit against Hood–Rich. It is equally inferable that Finley expected to be paid by National if National utilized his services. However, there is no evidence that anyone told Finley anything which could have led him to assume National would retain him if Stewart won the arbitration. Any such hope by Finley was mere speculation.

While the injudiciousness of Finley's remarks is startling, they amount to nothing more than an expression of his view of the evidence and a shameless invitation to National to consult him about National's suit against Hood–Rich.

■ An arbitrator is not precluded from developing views regarding the merits of a dispute early in the proceedings, and an award will not be vacated on the ground of evident partiality because an arbitrator expresses his views. *Spector v. Torenberg,* 852 F.Supp. 201, 209 [10] (S.D.N.Y.1994). As long as an arbitrator's view is one which arises from the evidence and the conduct of the parties, it cannot be fairly claimed that some expression of that view amounts to bias. *Health Services Management Corp. v. Hughes,* 975 F.2d 1253, 1267 (7th Cir.1992), *citing Ballantine Books, Inc. v. Capital Distributing Co.,* 302 F.2d 17, 21 (2d Cir.1962).

■ As noted earlier, in order to show evident partiality by an arbitrator, the interest or bias of the arbitrator must be direct, definite and capable of demonstration, rather than remote, uncertain or speculative. *Sheffield Assembly of God Church, Inc.,* 870 S.W.2d at 930. Any possibility that National would accept Finley's offer to aid National in its suit against Hood–Rich—an offer uninvited by National—is too speculative to constitute a financial interest by Finley in the outcome of the arbitration between National and Stewart.

We therefore find Stewart's third point meritorious. Accordingly, we hold the trial

court erred as a matter of law by ruling in conclusion of law 4 that findings of fact 17 through 22 warranted vacatur of the award under § 435.405.1(2).

Stewart's second point avers the trial court erred in considering the issue of Finley's alleged partiality. Stewart maintains National's pleadings in the trial court were not specific enough to preserve the issue for judicial consideration. Inasmuch as we, in adjudicating Stewart's third point, held the trial court erred in vacating the arbitration award on the ground of Finley's alleged partiality, Stewart's second point is moot.

■ We next consider Stewart's first point. It attacks the trial court's conclusions of law 1 through 3. For ease of discussion, we address each conclusion of law separately. We begin with the following findings of fact by the trial court:

"6. Throughout the pre-arbitration hearing process, [National] requested the arbitrators to require Stewart to make his claim more definite and certain.

7. The arbitrators ordered Stewart to set forth a detailed statement of his claim, 'styled comparatively to the claim previously submitted by National Avenue Building Company.'

8. Stewart never filed a statement of his claim in a style comparable to the claim submitted by [National]."

The above findings of fact are evidently the basis of the following conclusion of law:

"1. The arbitration award was procured by undue means in that the arbitration panel failed to require that Stewart set forth a definitive statement of his claim prior to the arbitration hearing and on that basis alone this court grants [National's] motion to vacate and remands this matter for rehearing of the arbitration before a new panel of arbitrators."

Although the above conclusion does not identify the statute on which it relies as authority for vacating the award, the parties have briefed the case on the premise that the conclusion is based on § 435.405.1(1),[7] which commands a trial court to vacate an arbitra-

tion award "procured by corruption, fraud or other undue means."

From the briefs and the massive record, we glean that the order referred to in finding of fact 7 is a letter dated March 16, 1987, from an official of the American Arbitration Association to the parties setting a deadline of April 30, 1987, for completion of various tasks by the parties. One such task was that Stewart file "a detailed statement of claim, styled comparably to the claim previously submitted by National Avenue Building Company."

In response to that directive, Stewart filed an "Amended Claim" April 29, 1987. It describes additional excavation and hauling he was required to do in regard to seventeen specifically identified lots in the project, sets forth additional work he was required to do in regard to width and slope ratios of ditches, recounts delays caused by inability to complete a "retention area" because of erroneous elevations, and specifies the compensation claimed for each of the above items.

On October 5, 1987, some five months after Stewart filed his amended claim, National moved the arbitrators to require Stewart to make that claim more definite.

On October 19, 1987, Stewart filed a "Second Amended Claim." It sets forth additional details regarding his claim, including various dates on which pertinent events occurred. That same date, National filed a motion seeking an order from the arbitrators requiring Stewart to make the second amended claim more definite. We find no ruling in the record on that motion; however, a "preliminary hearing" occurred November 23, 1987, attended by the parties' lawyers, two of the arbitrators, and other individuals. Various subjects were covered, including production of sundry records of Stewart for copying by National, computation of "earth volumes" and "load counts," witness lists, and stipulation of uncontested facts.

National asserts, "The failure of the arbitrators to require Stewart to set forth his claim in a clear manner made it impossible for [National] to prepare to present evidence at the hearing." Therefore, reasons Nation-

7. Footnote 2, *supra.*

al, Stewart obtained the arbitration award by undue means.

In Bozarth, *The Uniform Arbitration Act in Missouri,* 46 Mo.L.Rev. 627, 645–46 (1981), the author states, "This author was unable to find any cases where a court vacated an award under the [Uniform Arbitration Act] for fraud, corruption, or other undue means."

As noted earlier, there was a four-day evidentiary hearing before the arbitrators. Surprisingly, the prodigious record filed with us contains no transcript of that hearing. The only transcript filed with us is a 58–page transcript of the testimony presented to the trial court at the hearing following our mandamus order of September 9, 1994.

National's brief cites no arbitration rule or practice which the arbitrators allegedly violated in failing to grant National's motion that Stewart make his second amended claim more definite, nor does National's brief identify any evidence that National was unable to present because Stewart's second amended claim was too indefinite.

National's brief cites only one case in support of the trial court's conclusion of law 1. That case does not hold that failure of an arbitration panel to require a party to make his claim more definite warrants vacatur of an award under § 435.405.1(1) on the ground that it was procured by undue means.

Neither side cites a Missouri case defining "undue means" as used in § 435.405.1(1). The Supreme Court of Arkansas adopted a definition of "undue means" in *Arkansas Dept. of Parks and Tourism v. Resort Managers, Inc.,* 294 Ark. 255, 743 S.W.2d 389, 391 [1] (1988):

"*[U]ndue means* ... means something akin to fraud and corruption. 'Undue means' goes beyond the mere inappropriate or inadequate nature of the evidence and refers to some aspect of the arbitrator's decision or decisionmaking process which was obtained in some manner which was unfair and beyond the normal process contemplated by the arbitration act."

In *Shearson Hayden Stone, Inc., v. Liang,* 493 F.Supp. 104, 108 (N.D.Ill.1980), *aff'd* 653 F.2d 310 (7th Cir.1981), which involved the Federal Arbitration Act, the court held "undue means" connotes "some type of bad faith in the procurement of the award."

■ Enforcement of pleading requirements before an arbitrator is a procedural matter for the arbitrator. *USX Corporation v. West,* 781 S.W.2d 453, 456 [5] (Tex.App.— Houston (1st Dist.) 1989). The record is bare of any evidence that the arbitrators' failure to grant National's motion that Stewart make his second amended claim more definite was motivated by bad faith or corruption.

Furthermore, National makes only a conclusional allegation that it was prejudiced by the arbitrators' failure to grant the motion. As observed earlier, nothing in the record demonstrates that National showed the trial court any evidence that National was unable to present because the arbitrators failed to grant the motion. National's brief identifies no such evidence. Additionally, demonstrating prejudice is impossible where, as here, there is no transcript of the arbitration hearing.

We therefore hold the trial court erred as a matter of law by ruling in conclusion of law 1 that findings of fact 6 through 8 warranted vacatur of the award under § 435.405.1(1).

■ The second component of Stewart's first point attacks the trial court's conclusion of law 2. The trial court's findings of fact pertinent to that conclusion are:

"1. Stewart failed to comply with the arbitration panel's requirement that documentary evidence be exchanged between the parties.

(a) The arbitration panel issued a subpoena duces tecum to Don Stewart, Steve Stewart and C.P. Curd, Stewart's expert witness, at [National's] request.

(b) The return date on the subpoena duces tecum was November 23, 1987, the date of a preliminary hearing before the arbitration panel.

(c) At the arbitration hearing on November 23, 1987, Stewart represented to the panel that total documentation in his possession had been made available to

[National] for copying and that all requested documents had been produced.

(d) A number of documents listed by Stewart on his exhibit list filed· at the arbitration hearing were not listed on claimant's exhibit list at the preliminary hearing.

(e) The arbitration panel failed to compel the prehearing documentation and exhibit production requested by [National] prior to the arbitration hearing.

12. At the arbitration hearing, [National] objected to the introduction of documents and evidence which were to have been previously produced by Stewart pursuant to the arbitration panel's orders.

13. The arbitrators allowed documents into evidence even though they had not been produced prior to the arbitration hearing."

The conclusion of law pertinent to the above findings of fact is:

"2. The arbitration award was procured by undue means in that the arbitration panel failed to require that Stewart produce documentary evidence for review by [National] prior to the arbitration hearing and on that basis alone this Court grants [National's] motion to vacate and remands this matter for rehearing of the arbitration before a new panel of arbitrators."

The above conclusion, like conclusion of law 1, apparently invoked § 435.405.1(1) [8] as authority for vacating the award. ·The parties have briefed the case on that assumption.

Findings of fact 11 through 13, quoted *supra*, identify no specific documents which were received in evidence by the arbitrators without being produced for National's inspection prior to the arbitration hearing.

National's brief directs us to thirteen pages extracted from a transcript of the arbitration hearing. We have carefully studied those pages. At one point during the testimony of C.P. Curd (mentioned in finding of fact 11(a)), National objected because the

"recitation of facts" was "based on second and third and fourth-hand information." The objection did not complain about failure to produce documents.

Shortly thereafter, Stewart offered several exhibits in evidence, including Exhibit 29, a document captioned "Summary of Testimony of Charles Curd." National's lawyer stated:

"We would object to all those at this point until we have some opportunity to examine by cross-examination what the basis for them are, also so that we can have an opportunity to examine several of these exhibits that came in at the end that were not on the exhibit list, we've had no opportunity to look at them whatsoever."

One of the arbitrators said, "The ruling will be withheld on the óffer until the close of cross-examination." Thereafter, following a recess, National began cross-examining Curd. In the page and a half of cross-examination furnished us, there is no mention of any exhibit, nor is there a ruling on admissibility.

The objection by National's lawyer could have been reasonably understood by the arbitrators as a request that they defer ruling · on admissibility until National's lawyer could cross-examine Curd about "the basis" for the exhibits and until National's lawyer could examine "several" exhibits which "were not on the exhibit list." National's lawyer did not ask the arbitrators to reject any exhibit because it was not produced before the hearing.

▮▮▮ Additionally, all questions as to admission or rejection of evidence are matters for the arbitrators to decide in the exercise of their honest judgment. *Gozdor v. Detroit Automobile Inter–Insurance Exchange,* 52 Mich.App. 49, 216 N.W.2d 436, 437[1] (1974), *citing* 5 Am.Jur.2d, *Arbitration and Award,* § 122, p. 610. There is no evidence in the record that the arbitrators' ruling on admissibility of the exhibits—whatever it was—was motivated by anything other than their honest judgment.

The only case cited by National in support of the trial court's conclusion of law 2 in-

---

8. Footnote 2, *supra.*

volved the receipt of documents in evidence by arbitrators outside the presence of the parties after the arbitration hearing ended. That did not occur here.

Furthermore, National makes only a conclusional allegation that it was prejudiced by the receipt in evidence of undisclosed documents. Nothing in the record demonstrates that National showed the trial court how National was prejudiced. The trial court's findings 11 through 13, quoted *supra*, do not mention prejudice.

 In an appeal from a judgment following a jury verdict, the Western District of this Court held that a party claiming the trial court improperly received evidence has the burden of establishing prejudice by admission of the challenged evidence. *State ex rel. Missouri Highway & Transportation Commission v. Cowger*, 838 S.W.2d 144, 146[1] (Mo.App.W.D.1992). Such party must also demonstrate the absence of sufficient competent evidence to support the judgment. *Id.*

We see no reason that the same requirements should not apply when a party asks a trial court to vacate an arbitration award on the ground that evidence was erroneously received and the award was thereby procured by undue means. National has demonstrated no prejudice and, because of the lack of a transcript of the arbitration hearing, cannot demonstrate the absence of sufficient other evidence to support the award.

We therefore hold the trial court erred as a matter of law by ruling in conclusion of law 2 that findings of fact 11 through 13 warranted vacatur of the award under § 435.405.1(1).

 The third component of Stewart's first point attacks the trial court's conclusion of law 3. The trial court's finding of fact pertinent to that conclusion is:

"14. The deposition of C.P. Curd, Stewart's expert witness, was taken by [National] in a related lawsuit regarding the very same construction project which was the subject matter of this arbitration.

Curd refused to answer questions regarding the project stating that it would

prejudice 'our arbitration proceeding.' When asked how his answers could prejudice this arbitration proceeding, Curd stated as follows:

Because it gives them [National] information that they're not entitled to in arbitration. I don't know—I realize that arbitration in Missouri is very, very new and there are probably very, very few attorneys in the entire state that have any experience in arbitration, but I have had a great deal of experience in arbitration, and one of the basic things about arbitration is that there is no discovery.

Later in Curd's deposition testimony, he described arbitration as 'trial by ambush,' and further testified that the rules of arbitration 'prohibit' discovery."

The conclusion of law pertinent to the above finding of fact is:

"3. The arbitration award was procured by undue means in that Stewart, through his expert witness, was engaged in a calculated effort to confuse and mislead [National] regarding Stewart's claim and supporting evidence and on that basis alone this Court grants [National's] motion to vacate and remands this matter for rehearing of the arbitration before a new panel of arbitrators."

The above conclusion, like conclusions of law 1 and 2, apparently invoked § 435.405.1(1) [9] as authority for vacating the award. The parties have briefed the case on that assumption.

Citing § 435.380, which authorizes arbitrators to issue subpoenas for attendance of witnesses and production of documents, National asserts "discovery is not prohibited in arbitration."

The arbitrators obviously understood that. At the instance of National, the arbitrators issued a subpoena duces tecum to Curd, commanding him to appear at the "preliminary hearing" on November 23, 1987 (the proceeding referred to in finding of fact 11(b), quoted *supra*) and bring certain documents with him. A memorandum regarding the preliminary hearing, signed by one of the arbitra-

9. Footnote 2, *supra.*

tors, shows Curd attended that proceeding. Nothing in the memorandum indicates Curd failed to bring what the subpoena commanded, and nothing in the memorandum indicates National asked the arbitrators to compel Curd to produce anything else. The memorandum states, among other things:

"Field books and daily logs of the contractor were made available to [National] for copying. The authors of each were noted on the covers of the reproductions thereof. Other record books of the project were reviewed by [National] and selected copies made therefrom. Total documentation in the possession of [Stewart] has now been made available to [National] for such copying."

■ The record thus indicates that the arbitration proceeding was not tried entirely "by ambush." While National may not have enjoyed the comprehensive discovery afforded by interrogatories, requests for admissions, motions for production, and other means available in lawsuits, the absence of unlimited discovery is not a basis for vacating an arbitration award. As explained in Bozarth, 46 Mo.L.Rev. at 640:

"[The Uniform Arbitration Act] does not provide a method of discovery in preparing for the hearing, and courts generally have declined to make the civil rules of discovery available to participants in arbitration. The rationale expressed by one court was that 'arbitration, once undertaken, should continue freely without being subjected to a judicial restraint which would tend to render the proceedings neither one thing nor the other, but transform them into a hybrid, part judicial and part arbitrational.' This aspect of arbitration serves to expedite the proceedings and to maintain an informal atmosphere, even though it requires participation in a hearing without the degree of preparation common to litigation." (Citations omitted).

As noted in our discussion of conclusion of law 2, the record before us contains a few pages of Curd's testimony at the arbitration hearing. In those pages we find no objection by National to any of Curd's testimony on the ground that he failed to answer questions at a deposition in a related case, nor do we find any request by National that Curd be barred from testifying for that reason. Furthermore, National's brief identifies no specific prejudice suffered by National because of Curd's refusal to answer questions at deposition.

National cites no case in support of the trial court's conclusion of law 3, and we find no case even remotely suggesting that finding of fact 14 is sufficient to authorize vacatur of an arbitration award. We therefore hold the trial court erred as a matter of law by ruling in conclusion of law 3 that finding of fact 14 warranted vacatur of the award under § 435.405.1(1).

■ As reported earlier, Stewart's first point attacks the trial court's conclusions of law 1 through 3. Having found Stewart's attacks valid as to each of those conclusions, we now turn to Stewart's fourth point. It attacks the trial court's conclusions of law 5 and 6. For ease of discussion, we address each conclusion separately. We begin with the following findings of fact by the trial court:

"23. The parties agreed to require the arbitrators to present the arbitration award as a net change order setting forth the original contract with two change orders and then noting a net difference.

24. The arbitration panel entered an award in Stewart's favor.

25. The award was not set forth as a net change order as required by the parties."

The above findings of fact are evidently the basis of the following conclusion of law:

"5. The arbitrators exceeded their powers in that their award failed to conform to the parties' requirement that it be set forth as a net change order and on that basis alone this court grants [National's] motion to vacate and remands this matter for rehearing of the arbitration before a new panel of arbitrators."

Although the above conclusion does not identify the statute on which it relies as authority for vacating the award, the parties have briefed the case on the premise that the

conclusion is based on § 435.405.1(3),[10] which commands a trial court to vacate an arbitration award where the arbitrators "exceeded their powers."

As pointed out in our discussion of conclusion of law 3, a "preliminary hearing" was held November 23, 1987, and a memorandum regarding it was signed by one of the arbitrators. Finding of fact 23, quoted *supra*, is evidently based on a sentence in paragraph 2 of that memorandum. The sentence reads:

"It was concluded and agreed that a net change will be considered as an approach towards resolution, i.e., the original contract and the two change orders will be summarized and a net difference noted."

For convenience, we henceforth refer to the above sentence as "the net change proviso."

As reported in our 1990 opinion, 794 S.W.2d at 305, the arbitrators signed a five-page instrument captioned "Arbitration Award." It refers to the original contract in the amount of $637,834, to "Change Order Number One" executed April 19, 1984, in the amount of $29,840, and to "Change Order Number Two" executed August 24, 1984, in the amount of $24,528. The award lists (by category) the extra work for which Stewart sought payment from National and the respective amounts sought, the items (by category) for which National sought payment from Stewart and the respective amounts sought, and concludes by awarding Stewart $162,889 plus interest of $45,698.17, constituting the total award of $208,587.17 mentioned earlier.

The trial court's rationale in conclusion of law 5, as we understand it, is that the arbitrators exceeded their powers by failing to set forth their award in the form required by the net change proviso.

In *Hamilton Metals, Inc. v. Blue Valley Metal Products Co.*, 763 S.W.2d 225, 227[5] (Mo.App.W.D.1988), cited by Stewart, the court held:

"Generally, arbitrators are no more obligated to give reasons for an award than is a jury expected to explain a verdict. Unless required by statute or the terms under which the case is submitted to the arbitrator, it is not necessary that the award be accompanied by specific findings of fact or conclusions of law."

National maintains the arbitrators' award "is totally inconsistent with the authority granted the arbitrators as to how the award should be set forth." According to National, "what was agreed to by the parties were detailed, written findings of fact." Consequently, argues National, "In not setting forth the award as a net change order, as required by the agreement, the arbitration panel exceeded their powers."

We shall assume, arguendo, that the net change proviso constitutes a contract between the parties regarding the form in which the arbitrators are to set forth the award. In ascertaining whether arbitrators have exceeded their powers, courts bear in mind that construction of contracts in arbitration proceedings is a task for the arbitrators, not the courts. *Maine State Employees Association v. State Department of Defense and Veterans' Services*, 436 A.2d 394, 397 (Me.1981). Regardless of how a court might interpret an agreement, arbitrators do not exceed their powers if their interpretation, even if erroneous, nevertheless is rationally grounded in the agreement. *Id.*

We have studied the cases cited by National in support of the trial court's conclusion of law 5. Only one, *Meharry v. Midwestern Gas Transmission Co.*, 103 Ill.App.3d. 144, 58 Ill.Dec. 887, 430 N.E.2d 1138 (1981), is arguably pertinent. It involved a contention that the arbitrators violated a contractual provision requiring a statement of facts. The court found that the arbitrators' statement, though not set forth in "exhausting detail," was adequate. 430 N.E.2d at 1140[4].

Contrary to National's argument, there is no explicit requirement in the net change proviso that the arbitrators make detailed findings of fact. The only guidance regarding the award is that a "net change" will be "considered as an approach towards resolution" of the dispute, and that "the original contract and the two change orders will be summarized and a net difference noted."

10. Footnote 2, *supra*.

As emphasized by Stewart, the award summarizes the original contract and the two change orders, specifies the categories of extra work for which Stewart demanded payment from National and the respective amounts demanded, identifies the items for which National demanded payment from Stewart and the amounts demanded, and commands National to pay Stewart $208,-587.17. The award states this sum "is in full settlement of all claims submitted to this arbitration."

In *Gordon Sel–Way, Inc. v. Spence Brothers, Inc.*, 438 Mich. 488, 475 N.W.2d 704, 710 (1991) the court warned:

"[A]n allegation that the arbitrators have exceeded their powers must be carefully evaluated in order to assure that this claim is not used as a ruse to induce the court to review the merits of the arbitrators' decision."

National does not claim—and the trial court did not find—that the arbitrators ruled on any issue that was beyond their power to decide. National argues only that the net change proviso required the arbitrators to set forth findings of fact as to each item for which Stewart demanded payment from National, together with the amount (if any) due Stewart for such item, and findings of fact as to each item for which National demanded payment from Stewart, together with the amount (if any) due National for such item, and then strike a balance between all those amounts.

The net change proviso is not that specific. It provides only that "the original contract and the two change orders will be summarized and a net difference noted." Whether the word "summarized" requires the award to be as detailed as National advocates is, at the very least, an arguable issue.

Although the arbitrators' interpretation of the net change proviso differs from National's, we hold the form of the arbitrators' award is rationally grounded in the net

change proviso. Accordingly, the arbitrators did not exceed their powers in rendering the award in the form they selected. *Maine State Employees Association*, 436 A.2d at 397. We therefore hold the trial court erred as a matter of law by ruling in conclusion of law 5 that findings of fact 23 through 25 warranted vacatur of the award under § 435.405.1(3).

■ The second component of Stewart's fourth point attacks the trial court's conclusion of law 6. The trial court's findings of fact pertinent to that conclusion are 28 through 35. We need not recite them in this opinion. They chronicle the trial court's efforts to compel the arbitrators to "clarify" the award. That chapter of the epic appears in our 1990 opinion, 794 S.W.2d at 305–06.

Conclusion of law 6 reads:

"The arbitrators exceeded their powers in that they continually refused to clarify their award in conformance with the agreement of the parties and the orders of this Court and on that basis alone this Court grants [National's] motion to vacate and remands this matter for rehearing of the arbitration before a new panel of arbitrators."

Although the above conclusion does not identify the statute on which it relies as authority for vacating the award, the parties have briefed the case on the premise that the conclusion, like conclusion of law 5, is based on § 435.405.1(3).[11]

The trial court's efforts to compel the arbitrators to "clarify" the award were evidently based § 435.390.[12] As recounted in our 1990 opinion, 794 S.W.2d at 305–06, the "clarification" sought by the trial court was that the arbitrators answer numerous written questions inquiring about the details of how they arrived at the award. The answers would have amounted to findings of fact and conclusions of law. As explained in our discussion of the trial court's conclusion of law 5, the

---

**11.** Footnote 2, *supra.*

**12.** Section 435.390 reads, in pertinent part: "On application of a party or, if an application to the court is pending under section 435.400, 435.405 or 435.410, on submission to the arbitrators by the court under such conditions as the court may order, the arbitrators may modify or correct the award upon the grounds stated in subdivisions (1) and (3) of subsection 1 of section 435.410, or for the purpose of clarifying the award."

arbitrators were not required to perform such a task.

■ The award is unambiguous. It clearly awards Stewart $208,587.17 from National "in full settlement of all claims submitted to this arbitration." Furthermore, nothing in § 435.390 purports to authorize a court to vacate an arbitration award where an arbitrator refuses to clarify the award after submission by the court for that purpose under that statute. National cites no case holding that a court is authorized to vacate an award under such circumstances, and nothing in § 435.405 authorizes vacatur in such a situation. A court may vacate an arbitration award on only the grounds set forth by statute. *Stifel, Nicolaus and Co., Inc. v. Francis,* 872 S.W.2d 484, 486[5] (Mo.App.W.D. 1994).

Finding no authority for vacatur on the ground set forth in conclusion of law 6, we hold the trial court erred as a matter of law by ruling that findings of fact 28 through 35 warranted vacatur of the award under § 435.405.1(3).

The final ground on which the trial court vacated the award is set forth in the trial court's conclusion of law 7, which reads:

"The arbitrators conducted the arbitration hearing in such a manner as to prejudice substantially the rights of [National] in their failure to require Stewart to set forth a definite statement of his claim prior to the arbitration hearing and their admission of documentary evidence by Stewart not previously produced to [National] and on that basis alone this Court grants [National's] motion to vacate and remands this matter for rehearing of the arbitration before a new panel of arbitrators."

Although the above conclusion does not identify the statute on which it relies as authority for vacating the award, we infer it is § 435.405.1(4),[13] which commands a trial court to vacate an arbitration award where the arbitrators "so conducted the hearing, contrary to the provisions of section 435.370,

as to prejudice substantially the rights of a party." Stewart's fifth point attacks conclusion of law 7.

We have already addressed National's complaint that the arbitrators failed to require Stewart to set forth a definite statement of his claim (conclusion of law 1) and National's complaint that the arbitrators received documentary evidence that Stewart did not produce for National's inspection prior to the arbitration hearing (conclusion of law 2). Nothing further need be said on those subjects.

No other reason for vacatur appears in conclusion of law 7. We therefore hold the trial court erred as a matter of law by ruling that the factors identified in conclusion of law 7 warranted vacatur of the award under § 435.405.1(4).

We have now addressed all of Stewart's points relied on and have found that none of the seven grounds on which the trial court vacated the award is sufficient to warrant vacatur. National presents no other ground authorizing vacatur.

■ As reported in our 1990 opinion, 794 S.W.2d at 305–07, National once claimed in the trial court that the arbitration provision in the contract between it and Stewart was unenforceable. Had National desired to maintain that position, National could have asked the trial court to vacate the arbitration award without directing a rehearing.[14] However, in its brief submitted to the trial court following our 1992 mandamus opinion, 838 S.W.2d 516, National said: "[National] is seeking an order of the Court vacating the arbitration award and remanding the arbitration for further hearing before new arbitrators." National's prayer to the trial court was consistent with that statement.

Obviously, a rehearing would be unnecessary if the arbitration provision in the contract is unenforceable. National's brief in the trial court did not pray the court to vacate the award without directing a rehear-

13. Footnote 2, *supra.*

14. Under § 435.405.1(5), a trial court shall vacate an arbitration award where there "was no arbitration agreement and the issue was not ad-

versely determined in proceedings under section 435.355 and the party did not participate in the arbitration hearing without raising the objection."

ing. After the trial court entered its order, nothing in the record indicates National asked the trial court to set the order aside and replace it with an order vacating the award without directing a rehearing.

National's brief in this appeal requests us to "dismiss Stewart's appeal, or in the alternative, affirm the order of the circuit court remanding this matter to a panel of new arbitrators." National makes no alternative request that we affirm the portions of the trial court's order denying confirmation of the award and vacating the award, but that we set aside the portion directing the rehearing.

We conclude from the factors set forth in the three preceding paragraphs that National has abandoned its former position that the arbitration provision in the contract is unenforceable. *Cf. BCCLW/Casey, Inc. v. S.O. Gillioz Partners, Inc.,* 783 S.W.2d 174, 175 (Mo.App.S.D.1990).

The order appealed from is reversed and the cause is remanded to the trial court. The trial court is directed to enter an order confirming the arbitration award per § 435.400 and to enter judgment in conformity with the award per § 435.415.

PREWITT, P.J., and PARRISH, J., concur.