In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00039-CV


______________________________




RICHARD LEON WERLINE, Appellant



V.



EAST TEXAS SALT WATER DISPOSAL COMPANY, INC., Appellee




 


On Appeal from the County Court at Law II


Gregg County, Texas


Trial Court No. 2004-2742-CCL2




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Richard Leon Werline appeals the denial of his application to confirm an arbitration
award rendered in his favor under the Texas Arbitration Act (TAA). (1) Werline had instituted
an arbitration proceeding against East Texas Salt Water Disposal Company, Inc. (East
Texas) for breaching its contractual duty to employ Werline as its operations manager. 
The arbitrator found East Texas had materially breached the contract and awarded Werline
twenty-four months' pay as damages, consistent with the terms of Werline's employment
contract. When Werline filed an application to confirm the award, East Texas filed a
motion to vacate the award, alleging that there was no evidence to support the arbitrator's
decision and that the arbitrator committed a gross mistake. The trial court denied Werline's
motion to confirm, granted East Texas' motion to vacate, and directed a rehearing before
another arbitrator. Werline brings this interlocutory appeal. 

 The first issue before this Court is whether we have jurisdiction over this appeal. 
East Texas contends we lack jurisdiction because, in addition to denying the application
to confirm the arbitrator's award, the trial court vacated the award and directed a rehearing. 
We conclude, based on the plain language of the statute, that we do have jurisdiction over
this appeal. The second issue is whether the trial court erred in denying Werline's
application to confirm the arbitration award. Because the arbitrator did not commit such
a gross mistake that would imply bad faith or failure to exercise honest judgment, the trial
court erred in denying Werline's application to confirm the award. We, therefore, reverse
the trial court's judgment and render judgment confirming the arbitrator's award.

Factual Background

 This case centers around an employment agreement entered into by and between
Werline and East Texas November 30, 2000. Werline, an employee of East Texas since
1996, alleges East Texas committed a material breach of his employment contract when
it transferred him to a new position. The key terms of the employment agreement are as
follows:

 1. Initial Term. Subject to the terms and conditions specified in this
Agreement, Employer agrees to continue to employ Employee as Operations
Manager for the Initial Term as herein defined. In such position, Employee
shall be responsible for those duties normally associated with that position,
subject to such policies and guidelines as may be reasonably established
from time to time by the Board of Directors of Employer. Employee hereby
agrees to continue in such employment for a five (5) year period
commencing on the date hereof . . .

 . . . . 


 6. Employer Breach. In the event of the breach of any material provision
of this Agreement by Employer, which shall include, but not be limited to,
severance and termination of Employee's Employment other than for cause,
the Employee shall have the express contractual right and option to
terminate his employment with Employer or respond to such a breach upon
twenty (20) days written notice to Employer. In the event of termination or
response by Employee under the conditions last provided, the Employer
shall, as severance pay, be obligated and have a duty to continue pay to and
provide Employee monthly payments for twenty-four (24) successive months,
with each such payment to be equal to Employee's monthly base pay for the
month immediately preceding such termination . . . or Employer may elect 
to pay Employee, as severance payment, a lump sum equal to 100% of that
amount which would have been paid had such payments been made
monthly as last provided.


 Although the contract did not provide a job description for the position of operations
manager, Werline testified the following is a fair summary of the duties of the operations
manager at all relevant times: (1) management of day-to-day field operations through
supervision of field personnel, including foremen, hourly employees, and superintendent;
(2) approving financial transactions related to operations; (3) management representation
with the union; (4) representing the company with the railroad commission; (5) supervision
and  management  of  the  company  engineer,  including  the  company's  survey  crew;
(6) supervision and management of the purchasing department; and (7) evaluation of
special projects. Nick Adams, former President and CEO of East Texas, (2) testified the
above summary is accurate. 

 East  Texas  modified  Werline's  duties  in  a  memorandum  from  Adams,  dated
April 21, 2003, providing as follows: "Concerning personnel, Richard Werline will be
temporarily assigned essentially full-time to investigate the alternative businesses of a
[Skimmed Oil Recovery] plant and the disposal of non-Woodbine water. Most of his other
duties as Operations Manager will be handled by myself or other people." Werline testified
he thought the assignment was merely temporary until the June 5, 2003, board meeting. 
 Following the June 5, 2003, board meeting, Werline was informed that he would
continue investigating alternative lines of business and that Ricky Clements, the new
president of East Texas, would assume most of the duties performed by the operations
manager. The chief engineer was informed he should now report directly to Clements. 
Clements testified that Werline's assignment to investigate alternate business lines was
"permanent until [the Board of Directors] found out there was going to be a change." 
Werline delivered a letter to Clements, dated July 28, 2003, notifying East Texas that the
company had breached his employment agreement by removing him (Werline) from the
duties normally associated with the position of operations manager. 

 As contractually agreed by the parties, Werline's claim was submitted to binding
arbitration. Following a three-day hearing, the arbitrator, in a twelve-page judgment, found,
among other things, that East Texas' primary business of disposal of salt water from East
Texas oil-field production was declining. The arbitrator further concluded East Texas had
materially breached the contract by not continuing to employ Werline as operations
manager and awarded Werline twenty-four months' compensation under the severance
provisions of the agreement, as well as stipulated attorney's fees and expenses. Werline
filed a motion in the trial court to confirm the arbitrator's award. East Texas filed a motion
to vacate the arbitrator's award. The trial court found that there was no evidence to
support several of the arbitrator's findings and that 

 the material factual findings in the Award are so against the evidence and the
stipulated and judicially admitted facts before the Arbitrator that they
manifest gross mistakes in fact and law, a failure to exercise honest
judgment, the lack of impartiality and constitute willful misconduct resulting
in an award that was arbitrary and capricious. 


The trial court denied Werline's motion to confirm, vacated the arbitration award, and
ordered a rehearing.

Jurisdiction

 East Texas contends this Court lacks jurisdiction because the trial court vacated the
award and directed a rehearing. In support of its position, East Texas directs our attention
to a decision of the Fourteenth District Court of Appeals holding that it lacked jurisdiction
over interlocutory appeals of a denial of confirmation when the trial court also vacated the
award and directed a rehearing. See Prudential Secs., Inc. v. Vondergoltz, 14 S.W.3d 329
(Tex. App.--Houston [14th Dist.] 2000, no pet.). In addition, East Texas contends other
states, with the exception of Missouri, have uniformly held they lack jurisdiction under
similar circumstances. 

 The Plain Language of the Statute 

 Generally, only final decisions of trial courts are appealable. Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 195 (Tex. 2001); Hinde v. Hinde, 701 S.W.2d 637, 639 (Tex.
1985); see Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 1997). The Legislature
has, however, authorized the appeal of a number of interlocutory orders. The TAA
provides:

 (a) A party may appeal a judgment or decree entered under this chapter
or an order:


 (1) denying an application to compel arbitration made under Section 

 171.021;

 

 (2) granting an application to stay arbitration made under Section 171.023;

 

 (3) confirming or denying confirmation of an award; 


 (4) modifying or correcting an award; or 

 

 (5) vacating an award without directing a rehearing. 

 

Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (Vernon 2005). Section 171.098 is
substantially similar to Section 19 of the Uniform Arbitration Act. Compare Tex. Civ. Prac.
& Rem. Code Ann. § 171.098 with Unif. Arbitration Act § 19, 7 Part I U.L.A. 714 (2005). 
 The dispute in this case is whether denial of a motion to confirm an arbitration award
can be appealed when the trial court also vacates the award and directs a rehearing. 
When interpreting a statutory provision, we seek to find and apply the intent of the
Legislature; and if the text is unambiguous, we will be guided by "the statute's plain
language unless that interpretation would lead to absurd results." Tex. Dep't of Protective
& Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 176-77 (Tex. 2004); see
City of San Antonio v. City of Boerne, 111 S.W.3d 22, 25 (Tex. 2003). Under the plain
language of the statute, a party can appeal the denial of an application to confirm an
arbitration award, but cannot appeal an order which vacates an award and directs a
rehearing. East Texas argues that the plain language of subsection (a)(3) should not
control. 

 Texas Cases

 As noted above, East Texas directs our attention to the Vondergoltz case. (3) In that
case, the Fourteenth court held it lacked jurisdiction over an appeal of the denial of an
application to confirm because the trial court ordered a rehearing. Vondergoltz, 14 S.W.3d
at 331; see also Poole, 2000 Tex. App. LEXIS 6825, at *4. The Vondergoltz court
concluded an order denying confirmation of an arbitration award is the functional equivalent
of an order vacating an award. Vondergoltz, 14 S.W.3d at 331. The court reasoned that
"[t]o hold otherwise would render the language 'without directing a rehearing' without effect
and would elevate form over substance by allowing an appeal where rehearing is directed
in denying a request for confirmation but not in granting a request to vacate an award." Id.
(citations omitted). 

 Decisions in Other States

 According to East Texas, the courts of other states that have examined the issue,
with the lone exception of Missouri, have uniformly found they lacked jurisdiction. East
Texas contends this Court should follow the lead of the majority of these other state courts
because the TAA provides that it "shall be construed to effect its purpose and make
uniform the construction of other states' law applicable to an arbitration." (4) 

 East Texas cites decisions from Texas and at least seven states in support of its
argument. (5)
 Several of these cases do contain dictum favorable to East Texas' position. (6)
 
Most, however, are distinguishable on the basis that the parties did not attempt to appeal
a denial of confirmation. (7) Only the Fourteenth District Court of Appeals of Texas,
Minnesota, and the District of Columbia have found a lack of jurisdiction when a party
appealed the denial of an application to confirm. See Vondergoltz, 14 S.W.3d at 331;
Kowler Assocs. v. Ross, 544 N.W.2d 800, 801 (Minn. Ct. App. 1996); Connerton, Ray &
Simon v. Simon, 791 A.2d 86, 88 (D.C. 2002). 

 On the other hand, a state court in Missouri has determined it has jurisdiction to
entertain such appeals. In Stewart, the Missouri Court of Appeals held it had jurisdiction
to consider an appeal from a denial of an application to confirm. Nat'l Ave. Bldg. Co. v.
Stewart, 910 S.W.2d 334 (Mo. App. S.D. 1995). There, as in the instant case, the trial
court denied confirmation of the award, vacated the award, and directed a rehearing before
a new panel of arbitrators. Id. at 338. The Stewart court noted that denying confirmation
and vacating the award were clearly bases for appealing and concluded that directing a
rehearing before a new panel did not extinguish the right to appeal. (8)
 Id. at 341. The court
reasoned that otherwise the process could "continue ad infinitum" and noted its conclusion
was consistent with Missouri's policy of allowing an appeal from a decision to grant a
motion for new trial. (9) Id. 

 This Court has Jurisdiction

 We disagree with Vondergoltz. We believe the interpretation of the statute, as
expressed in that opinion, is contrary to the plain language of the statute, and in essence,
rewrites it. Further, that interpretation destroys the benefits of the arbitral process and
could indefinitely prevent a party from appealing. The plain language of the statute should
control.

 Under the interpretation in Vondergoltz, subsection (a)(3) is rendered essentially
meaningless. "[E]very word in a statute is presumed to have been used for a purpose,"
and we attempt to give effect to each clause and word if reasonably possible. Tex.
Workers' Comp. Ins. Fund v. Del Indus., Inc., 35 S.W.3d 591, 593 (Tex. 2000). The
interpretation applied in Vondergoltz essentially adds the phrase "without directing a
rehearing" into subsection (a)(3), and thereby rewrites the statute. Under the TAA, a court
must confirm an award unless grounds exist for vacating, modifying, or correcting an
arbitration award. See Tex. Civ. Prac. & Rem. Code Ann. § 171.087 (Vernon 2005). Thus,
unless the trial court fails to follow the statutory procedures, a denial of an application to
confirm must be accompanied by a vacatur or other order. Under Vondergoltz, an
interlocutory appeal would only be authorized under subsection (a)(3) in the rare situation
when the trial court denies a motion to confirm, but fails to vacate the award. Thus, only
if the trial court refuses to follow the statutory procedures would an interlocutory appeal be
available under subsection (a)(3). Vondergoltz renders subsection (a)(3) meaningless
under the guise of preventing subsection (a)(5) from being meaningless. 

 When two provisions govern the same subject matter, an effort should be made to
harmonize and give effect to both provisions. See Argonaut Ins. Co. v. Baker, 87 S.W.3d
526, 531 (Tex. 2002). We are to presume that "the entire statute is intended to be
effective." Tex. Gov't Code Ann. § 311.021(2) (Vernon 2005). As discussed above,
Vondergoltz renders subsection (a)(3) meaningless and essentially rewrites the statute. 
The plain language of the statute, though, gives effect to both subsections. Under the plain
language of the statute, a party can appeal the denial of an application to confirm, but is
prohibited from appealing from the granting of a vacatur which directs a rehearing. The
word "denying" in subsection (a)(3) is not meaningless because a party can appeal from
an order denying an application to confirm an arbitration award. The phrase "without
directing a rehearing" is not meaningless because a party is still prohibited from appealing
from an order vacating an arbitration and directing a rehearing. 

 We further believe Vondergoltz destroys the benefits of the arbitral process and
creates the possibility that appeal will be denied indefinitely. The purpose of arbitration is
to avoid the formalities, delay, and expense of ordinary litigation. Ferguson v. Ferguson,
110 S.W.2d 1016, 1021 (Tex. Civ. App.--Eastland 1937, no writ); see New Process Steel
Corp. v. Titan Indus. Corp., 555 F.Supp. 1018, 1021 (S.D. Tex. 1983). Allowing
interlocutory appeals furthers the efficiency of arbitration by deciding the disputed issue
before the costs of a second arbitration are borne by the parties. In addition, as the
Missouri court noted, the process could continue ad infinitum. The trial court could
continue to grant vacatur multiple times until the result it desires is reached or one of the
party's resources are exhausted. 

 We agree with Stewart that the trial court's order granting a motion to vacate and
directing a rehearing does not extinguish a party's right to appeal the denial of its motion
to confirm. (10) While we note a few courts have disagreed, there is no uniform consensus
on whether an interlocutory appeal is permitted. The statute's plain language is clear and
unambiguous--this Court has jurisdiction to entertain appeals from orders denying
confirmation.

On the Merits

 In his two points of error, Werline contends the trial court erred in denying his motion
to confirm the arbitrator's award. The trial court found there was no evidence: (1) of a
material  breach  of  any  provision,  (2)  the  company's  board  acted  unreasonably,  or
(3) supporting a finding that Werline was terminated, constructively or otherwise. In
addition, the trial court found the arbitrator committed a gross mistake. Werline contends
there is sufficient evidence to support the arbitrator's award and that the arbitrator did not
commit a gross mistake. We agree. As discussed below, there was more than a scintilla
of evidence supporting the arbitrator's award, even if the trial court was authorized to
review the legal sufficiency of the evidence. Further, the arbitrator's award, even if
erroneous, was not such a gross mistake as to indicate bad faith or a failure to exercise
honest judgment.

 Standard of Review

 East Texas cites Koch v. Koch, 27 S.W.3d 93, 95 (Tex. App.--San Antonio 2000,
no pet.), and Henry v. Halliburton Energy Services, Inc., 100 S.W.3d 505, 510 (Tex.
App.--Dallas 2003, pet. denied), for its position that the appropriate standard of review is
abuse of discretion. We are not convinced that an abuse of discretion is the appropriate
standard of review. (11) Numerous other cases have utilized a de novo review for vacation,
modification, or confirmation of an arbitration award. See, e.g., Brabham v. A.G. Edwards
& Sons, Inc., 376 F.3d 377, 380 (5th Cir. 2004); Brook v. Peak Int'l, Ltd., 294 F.3d 668, 672
(5th Cir. 2002) (de novo standard "intended to reinforce the strong deference due an
arbitrative tribunal"); Hisaw & Assocs. Gen. Contractors, Inc. v. Cornerstone Concrete Sys.,
Inc., 115 S.W.3d 16, 18 (Tex. App.--Fort Worth 2003, pet. denied); Tanox, Inc. v. Akin,
Gump, Strauss, Hauer & Feld, L.L.P., 105 S.W.3d 244, 250 (Tex. App.--Houston [14th
Dist.] 2003, pet. denied); Thomas James Assocs., Inc. v. Owens, 1 S.W.3d 315, 320 (Tex.
App.--Dallas 1999, no pet.); Int'l Bank of Commerce v. Int'l Energy Dev. Corp., 981
S.W.2d 38, 43 (Tex. App.--Corpus Christi 1998, pet. denied). We will review de novo the
trial court's denial of Werline's application to confirm. (12) 

 Our review of the arbitrator's finding, though, is extraordinarily narrow. Cooper v.
Bushong, 10 S.W.3d 20, 24 (Tex. App.--Austin 1999, pet. denied). Because arbitration
is favored as a means of dispute resolution, every reasonable presumption must be
indulged to uphold the arbitrator's decision, and none is indulged against it. Id.; J.J.
Gregory Gourmet Servs. v. Antone's Import Co., 927 S.W.2d 31, 33 (Tex. App.--Houston
[1st Dist.] 1995, no pet.). "Review is so limited that an arbitration award may not be
vacated even if there is a mistake of fact or law." Faulconer, Inc. v. HFI Ltd. P'ship, 970
S.W.2d 36, 39 (Tex. App.--Tyler 1998, no pet.); see Nuno v. Pulido, 946 S.W.2d 448, 452
(Tex. App.--Corpus Christi 1997, no writ). "An arbitration award is to be given the same
weight as a trial court's judgment, and the reviewing court may not substitute its judgment
for the arbitrator's merely because it would have reached a different result." Koch, 27
S.W.3d at 96. 

 Grounds to Vacate

 The common-law grounds for vacating an arbitration award are as follows: (1)
fraud; (2) misconduct; or (3) such gross mistake as would imply bad faith and failure to
exercise honest judgment. Riha v. Smulcer, 843 S.W.2d 289, 292 (Tex. App.--Houston
[14th Dist.] 1992, writ denied). (13) A gross mistake is a mistake that implies bad faith or a
failure to exercise honest judgment and results in a decision that is arbitrary and
capricious. Bailey & Williams v. Westfall, 727 S.W.2d 86, 90 (Tex. App.--Dallas 1987, writ
ref'd n.r.e.). A judgment rendered after honest consideration given to conflicting claims,
no matter how erroneous, is not arbitrary and capricious. Id. In addition, the parties
agreed at trial that the trial court could reverse the award if there was "no evidence" to
support it. (14) 

 Error in Failure to Confirm

 The trial court relied on two grounds in vacating the award: no evidence and gross
mistake. As noted above, the trial court found there was no evidence: (1) of a material
breach   of   any   provision;   (2)   that   the   company's   board   acted   unreasonably;   or
(3) supporting a finding that Werline was terminated, constructively or otherwise. 
According to Werline, the trial court erred because there is evidence to support the
arbitrator's award and the arbitrator did not commit a gross mistake.

 As argued by Werline, there is evidence to support every element of a breach of
contract. The elements of a breach of contract claim are as follows: (1) there is a valid,
enforceable contract; (2) the claimant performed as required under the contract; (3) the
defendant has breached the contract; and (4) the defendant's breach caused the claimant
injury. Valero Mktg. & Supply Co. v. Kalama, Int'l, 51 S.W.3d 345, 351 (Tex.
App.--Houston [1st Dist.] 2001, no pet.); Landrum v. Devenport, 616 S.W.2d 359, 361
(Tex. App.--Texarkana 1981, no writ). There is no dispute that the employment
agreement is a valid enforceable contract. It was generally recognized within East Texas
that Werline excelled at his job. Werline testified he wanted to be operations manager
because he had been involved in operations his entire career, was "good at it," and
believed his job was more secure as operations manager. 

 Werline testified he went to work for East Texas with the intent to remain employed
there until retirement. In the new position, Werline was no longer in charge of field
operations, which comprised approximately seventy to eighty percent of the total budget
of East Texas. He was also removed as management representative in an ongoing union
grievance. Key operational personnel were informed to report to Clements instead of
Werline. Of the duties discussed earlier, the only duty which Werline retained in his new
position was the duty to investigate new lines of business. In addition, there were multiple
attempts by Clements to convince Werline to accept a six-month severance package. (15)

 East Texas contends, on several grounds, that the trial court was within its discretion
in vacating the award: (1) because the arbitrator did not consult a transcript of the
arbitration proceedings; (16) (2) because Werline admitted many facts which allegedly
contradict his legal position; and (3) the arbitrator made several conclusions unsupported
by the evidence. East Texas contends the trial court did not abuse its discretion in
vacating the award.

 Werline did concede the truth of certain facts and information that was damaging
to his position. He conceded that evaluations of special projects were a part of his prior
duties as operations manager and that not all of his duties in that position were removed. 
He admitted the duties normally associated with the operations manager position would
change over time. He agreed it was appropriate for East Texas to modify his duties from
time to time. He admitted he was the one who requested a title change when he was
assigned to investigate new business opportunities full time. He admitted that performing
temporary assignments outside of operations management would not have created a
problem under his contract. These admissions, however, do not preclude a fact-finder
from finding Werline was no longer responsible for the duties normally associated with the
position of operations manager. 

 East Texas directs our attention to several conclusions by the arbitrator which it
alleges are not supported by the evidence. Only one of the conclusions complained of,
however, is not supported by direct evidence. The arbitrator found that Adams (the former
president of East Texas) lost his job due to lack of knowledge of operations. Although the
arbitrator's conclusion is a reasonable inference, there is no direct evidence that Adams
lost his job for this reason. While the arbitrator's conclusion in this regard is not supported
by direct evidence, the finding is not significant to the ultimate determination that East
Texas committed a material breach of the contract. One erroneous finding--if it was
erroneous--does not demonstrate such a gross mistake as to demonstrate bad faith. 

 East Texas alleges there is no evidence to support other conclusions made by the
arbitrator. It contends there is no evidence to support the following conclusion: 

 The operations duties changed over time since there was a reduction of the
number of hourly people from 60 to 24 during Werline's tenure. Werline had
instituted efficiencies and cross-trained employees thereby reducing the
personnel requirements. Werline was so successful in cross-training other
employees that he commented on more than one occasion that he had
worked himself out of a job.


East Texas argues, without citation to the record, that this conclusion is not supported by
the evidence because "[t]he testimony concerning cross-training concerned the Company's
policy, for its own benefit, and showed that employees should expect that job duties would
be fluid, depending on the Company's needs." This argument is not inconsistent with the
arbitrator's finding. In addition, the record contains testimony that employees were cross-trained by Werline, and Adams testified Werline used to say he had "worked himself out
of a job." There is more than a scintilla of evidence to support the arbitrator's conclusion.

 East Texas also contends the arbitrator erred in concluding "Werline wanted to be
with a stable company where he could retire and was concerned he had made a bad
decision." In support, East Texas says the contract did not promise employment beyond
its initial term and directs us to Werline's testimony that he did not believe the board in
place as of 2003 would give him a new contract. East Texas' argument misinterprets the
arbitrator's conclusion. East Texas' interpretation requires the assumption that Werline
made the decision in 2003 to be with a stable company where he could retire. It can be
reasonably inferred from the arbitrator's conclusion that the decision was made when
Werline went to work for East Texas in 1996. Werline testified he went to work for East
Texas with the intent to remain employed there until retirement. Under this reasonable
inference, the arbitrator's conclusion is supported by more than a scintilla of evidence.

 East Texas further contends the arbitrator ignored the fact that Werline retained at
least one important duty and that the duties of operations manager changed over time. 
East Texas also claims the arbitrator erred in concluding "[t]he agreement . . . specifically
provides that Werline would be responsible for those duties normally associated with the
position of Operations Manager, which was not happening." As discussed above, the
evidence established Werline was no longer in charge of field operations, an ongoing union
grievance, and other duties. Key operational personnel were informed to report to
Clements instead of Werline. There is evidence to support the arbitrator's conclusion.

 According to East Texas, the arbitrator erred in concluding Clements "was doing
whatever was necessary to preserve his job by becoming more involved in operations and
moving Werline out of operations to the new business duties" and "it can be demeaning
to be assigned . . . duties which have no future." Clements testified Adams had been
criticized for not being knowledgeable about operations. In its discussion of why the
arbitrator erred, East Texas fails to provide record citations to contrary testimony and
merely repeats its argument that, as long as Werline was focused on at least one of his
former duties, the change was not unreasonable. At a minimum, the arbitrator's
conclusions are reasonable deductions from the evidence. 

 Last, East Texas contends the arbitrator erred in concluding "[Adams]
recommended the termination of Werline and others to the board if ETSWD was going to
cut personnel to the bare bone." Adams testified he recommended to the board to
terminate Werline. There is some evidence to support the arbitrator's finding.

 In essence, East Texas' contention is that, because the change in Werline's duties
was a reasonable business practice, it was not a material breach of the contract. However,
the reasonable policy provision cannot be allowed to completely rewrite the contract. Such
an interpretation would render the rest of the contract provisions meaningless and would
be contrary to the basic rules of contract interpretation. Even a reasonable business
practice, under certain circumstances, can be a material breach of a contract. 

 In the final judgment, the trial court exceeded the narrow scope of review by
substituting its own factual determinations for those of the arbitrator. The party seeking 
to vacate an arbitration award has the burden of demonstrating how the arbitrator made
a gross mistake. Anzilotti v. Gene D. Liggin, Inc., 899 S.W.2d 264, 267 (Tex.
App.--Houston [14th Dist.] 1995, no writ). The trial court's role is not to re-evaluate the
evidence, but rather merely to determine if the arbitrator acted in bad faith or failed to
exercise honest judgment. An arbitrator's judgment has the same effect as a judgment
of a court of last resort; a trial court cannot substitute its judgment for that of the 
arbitrator's. Jameison & Harris v. Nat'l Loan Investors, 939 S.W.2d 735, 737 (Tex.
App.--Houston [14th Dist.] 1997, writ denied). Every reasonable presumption must be
indulged to uphold the arbitration proceeding. Antone's Import Co., 927 S.W.2d at 33. 

 There is more than a scintilla of evidence to support the arbitrator's conclusion that
East Texas materially breached the contract. A reasonable person could have concluded
from the evidence that Werline was no longer responsible for the duties normally
associated with the position of operations manager. As noted above, the contract does
provide that the duties are subject to reasonable policies and guidelines of the board of
directors. However, the reasonable policies provision cannot be interpreted to supersede
the explicit language of the contract providing that Werline will be the operations manager.

 The trial court further erred in concluding the arbitrator committed a gross mistake. 
The question before the trial court was not whether the arbitrator reached the correct
conclusion, but merely whether the arbitrator erred so egregiously that bad faith can be
inferred. The arbitrator's conclusion that the board of directors' action was a material
breach of the agreement is clearly not so erroneous as to indicate bad faith or a failure to
exercise honest judgment.

Conclusion

 We conclude, based on the plain language of the TAA, that we have jurisdiction to
entertain this interlocutory appeal and that the trial court erred in denying Werline's
application to confirm the arbitrator's award. Even if the trial court could review the award
for legal sufficiency, there is more than a scintilla of evidence that East Texas materially
breached the contract. The arbitrator did not err so egregiously as to imply bad faith or a
failure to exercise honest judgment; neither can we say the arbitrator's decision was
arbitrary or capricious. 

 We reverse the trial court's judgment and render judgment confirming the arbitrator's 


award. 

 



 Donald R. Ross

 Justice


Date Submitted: November 30, 2006

Date Decided: December 18, 2006
1. We note the Federal Arbitration Act (FAA) "preempts state statutes to the extent
they are inconsistent with that Act." Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex.
1992). Neither party contends the FAA preempts the TAA in this case.
2. Adams resigned as president and CEO of East Texas May 22, 2003, but remained
an employee of East Texas until December 31, 2003.
3. The other Texas cases cited by East Texas are distinguishable on the basis that
the parties did not attempt to appeal a denial of confirmation. See Stolhandske v. Stern,
14 S.W.3d 810 (Tex. App.--Houston [1st Dist.] 2000, pet. denied); see also Bison Bldg.
Materials, Ltd. v. Aldridge, No. 01-05-00330-CV, 2006 Tex. App. LEXIS 8162 (Tex.
App.--Houston  [1st  Dist.]  Sept.  14,  2006,  no  pet.  h.);  Poole  v.  USAA  Cas.  Ins. Co.,
Nos. 14-99-00740-CV, 14-99-01056-CV, 2000 Tex. App. LEXIS 6825, at *4 (Tex.
App.--Houston [14th Dist.] Oct. 12, 2000, pet. denied) (not designated for publication); cf.
J.D. Edwards World Solutions Co. v. Estes, Inc., 91 S.W.3d 836 (Tex. App.--Fort Worth
2002, pet. denied) (vacatur without directing rehearing). We note, however, that a few of
the cases do contain dictum favorable to the position taken by East Texas. See
Stolhandske, 14 S.W.3d at 810; see also Aldridge, 2006 Tex. App. LEXIS 8162; Poole, 
2000 Tex. App. LEXIS 6825.
4. Tex. Civ. Prac. & Rem. Code Ann. § 171.003 (Vernon 2005); see Pullara v. Am.
Arbitration Ass'n, 191 S.W.3d 903, 907 (Tex. App.--Texarkana 2006, pet. denied). 
5. East Texas also cites Atlantic Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276 (5th
Cir. 1994). This case is distinguishable because it did not concern an appeal from a denial
of an application to confirm and the court concluded the FAA governed the dispute at
issue. Although the court noted neither TAA nor UAA "allow appeals from orders which
both vacate an award and direct a rehearing of the dispute," the Fifth Circuit's decision
relied on the FAA. Id. (construing predecessor to Section 171.098). Because the FAA
contains different procedural standards for interlocutory appeals, this case has limited
persuasive value.

6. See Me. Dep't of Transp. v. Me. State Employees Ass'n, 581 A.2d 813, 815 (Me.
1990); Neb. Dep't of Health & Human Servs. v. Struss, 623 N.W.2d 308, 312 (Neb. 2001);
Caron v. Reliance Ins. Co, 703 A.2d 63 (Pa. Super. Ct. 1997).

7. See City of Ft. Lauderdale v. Fraternal Order of Police, Lodge No. 31, 582 So.2d
162 (Fla. App. 1991); Max Rieke & Bros., Inc. v. Van Deurzen & Assocs., P.A., 118 P.3d
704, 708 (Kan. Ct. App. 2005); Me. State Employees Ass'n, 581 A.2d at 815; Struss, 623
N.W.2d at 312; Caron, 703 A.2d 63; Boyce v. St. Paul Prop. & Liab. Ins. Co., 618 A.2d 962
(Pa. Super. Ct.1992); Double Diamond Constr. v. Farmers Coop. Elevator Ass'n of
Beresford, S.D., 656 N.W.2d 744 (S.D. 2003).
8. East Texas contends the Missouri court might decide Stewart differently today. 
In support of this speculation, East Texas cites Crack Team USA, Inc. v. American
Arbitration Ass'n, 128 S.W.3d 580 (Mo. Ct. App. 2004). However, in Crack Team, the trial
court did not deny a motion to confirm. Id. The court cited Stewart and noted it was faced
with a different factual scenario. Id. At least two recent decisions have indicated Missouri
is not retreating from its holding. See Air Shield Remodelers v. Biggs, 969 S.W.2d 315,
316 (Mo. Ct. App. 1998); see also Whitney v. Alltel Commc'ns, Inc., 173 S.W.3d 300, 306
(Mo. Ct. App. 2005) (suggesting right to appeal in dicta).

9. In Vondergoltz, the Fourteenth court noted that, "to the extent an order directing
rehearing of an arbitration is analogous to an order granting a motion for new trial, the rule
in Texas that the latter is not final or appealable dictates a result contrary to that reached
in Stewart by reference to the opposite rule." Id. (citations omitted). But, see discussion
in footnote 10 below.
10. East Texas emphasizes that Missouri allows an appeal from an order granting a
motion for new trial. We are not persuaded that the differences between the respective
policies of Texas and Missouri concerning motions for new trial dictate a different result. 
There are significant differences between a motion for new trial and a motion to vacate an
arbitration award. The standards for granting the motions are extraordinarily different. A
trial court has much greater discretion in granting a motion for new trial than in granting a
motion to vacate an arbitration award. A motion for new trial is granted by a trial court who
heard all of the evidence and observed the demeanor of the witnesses. A motion to vacate
is granted by a trial court who at best has a transcript of the arbitration hearings. Because
of these significant differences between a motion for new trial and a motion to vacate an
arbitration award, the fact that Missouri allows a party to appeal from an order granting a
new trial is not a significant factor in our analysis.
11. The San Antonio Court of Appeals adopted the abuse of discretion standard of
review in Koch without citing any authority. See Koch, 27 S.W.3d at 95 (arbitration
concerning prenuptial agreement). In Henry, the Dallas Court of Appeals cited an opinion
reviewing a motion for new trial as authority. Henry, 100 S.W.3d at 509 (citing Chavarria
v. Valley Transit Co., 75 S.W.3d 107, 110 (Tex. App.--San Antonio 2002, no pet.)).
12. In the hearing before the trial court in this case, there was no testimony or
evidence other than the transcripts of the arbitration hearing and the statements of
counsel. Therefore, the trial court is not in an appreciably better position to review the
transcripts of the arbitration proceeding than we are. If evidence had been introduced at
the hearing, an abuse of discretion standard of review might be appropriate to review any
factual findings made by the trial court based on evidence presented at the hearing. See
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 
13. We note East Texas has not alleged any grounds under the TAA. Under that Act,
an arbitration award should be vacated if the rights of a party were prejudiced by evident
partiality, corruption, misconduct, or willful misbehavior of an arbitrator. IPCO-G&C Joint
Venture v. A. B. Chance Co., 65 S.W.3d 252, 256 (Tex. App.--Houston [1st Dist.] 2001,
pet. denied); see Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (Vernon 2005). Grounds
under the TAA are cumulative of the common law. Riha, 843 S.W.2d at 292. 

 
14. Werline states in his reply brief that he does not concede the trial court could
vacate an arbitration award based on a finding of "no evidence" of any given issue. At the
hearing before the trial court, however, Werline's attorney stated, "no evidence is about the
only way [East Texas] can attack the validity of this particular award." The parties have
failed to cite any caselaw authorizing a "no-evidence" review, and our own search has not
found any Texas cases recognizing a "no-evidence" review. We are not convinced an
arbitration award can be reviewed for legal sufficiency of the evidence. The First Court of
Appeals has held: "[i]n the absence of a statutory or common law ground to vacate or
modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints,
including the sufficiency of the evidence to support the award." A. B. Chance Co., 65
S.W.3d at 256; see also Antone's Import Co., 927 S.W.2d at 33; cf. Kergosien v. Ocean
Energy, Inc., 390 F.3d 346, 353 (5th Cir. 2004); Brabham, 376 F.3d at 381-85. However,
it is not necessary for us to decide this issue since, as discussed below, there is clearly
more than a scintilla of evidence supporting the arbitrator's award.
15. Werline alleges these attempts were made because the alternative lines of
business being investigated by Werline were not "going to go anywhere." Clements
testified he made the offers, merely as a friend, since he could see Werline was not
pleased with the new arrangement.

16. Other than unsworn statements made by counsel for East Texas, the record does
not reflect that the arbitrator refused to consult the transcript of the arbitration. But, even
if counsel's statements qualify as evidence, this fact is irrelevant since the arbitrator
presided over the arbitration and, according to the record, took forty pages of notes.